# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TRAVARIUS DANIEL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 2:11-CV-1355-VEH** |
| ) | |
| **CITY OF BIRMINGHAM, as a** ) | |
| **person under U.S.C. § 1983; et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Travarius Daniel ("Mr. Daniel") initiated this civil rights case on April 20, 2011, against several different defendants, including the City of Birmingham (the "City") and the Birmingham Chief of Police A.C. Roper (the "Chief"), sued in his individual and official capacities. (Doc. 1). The lawsuit arises out of an incident that occurred when Mr. Daniel was running an errand for The Down Town Lounge on May 20, 2011. (Doc. 1 ¶ 11). Specifically, Mr. Daniel maintains that, upon exiting his vehicle with his hands in the air after being pulled over by several Birmingham Police Department officers in unmarked cars, he was allegedly beaten by law enforcement to the point of unconsciousness. (Doc. 1 ¶¶ 11, 13).

On May 18, 2011, the City and the Chief filed a Motion to Dismiss (Doc. 15) relating to counts IV, V, and VI of the complaint. Pursuant to appendix III of the court's uniform initial order (Doc. 12) entered on May 16, 2011, Mr. Daniel's deadline to respond to the Motion ran on June 1, 2011. Mr. Daniel has filed no opposition, and the Motion is now under submission.

For the reasons explained below, the Motion is **DENIED**. However, the court *sua sponte* **ORDERS** Mr. Daniel to replead his complaint within 20 days from the entry date of this order, to clarify whether counts IV, V, and VI are asserted against the Chief in his individual capacity, his official capacity, or both. In so repleading, Mr. Daniel should further clarify as to both Officers M. Phillips ("Officer Phillips") and J.S. Manning ("Officer Manning"), whether counts I, II, and III are asserted against each of them in their individual capacities, official capacities, or both.

## II.   APPLICABLE STANDARDS

### A.   Motion to Dismiss

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### B. Qualified Immunity

Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Qualified immunity is a question of law to be decided by the court prior to trial. It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow*, 457 U.S. at 815-19. Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if the challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818.

The objective-reasonableness test is a two-part analysis.  First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred.  *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990) (citations omitted).  A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties.  *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988);  *Cronen v. Texas Dep't of Human Services*, 977 F.2d 934, 939 (5th Cir. 1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith.  *Hutton*, 919 F.2d at 1537.  The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'"  *Id.* (citations omitted).  The second prong of the objective-reasonableness test has two sub-parts.  *Id.* at 1538.  First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred.  *Id.*  Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law."  *Id.*

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that, in light of the preexisting law, the unlawfulness must be apparent. *Id.* (citations omitted). Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, . . . the law clearly proscribed the actions the defendant took." *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989), *cert. denied*, 493 U.S. 831 (1989) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

In determining whether the plaintiff meets this burden in the context of a motion to dismiss, the court is guided by the Eleventh Circuit's recent holding in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), which clarifies that the heightened pleading rule no longer applies to civil rights cases in which a qualified immunity

defense is asserted:

> While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, <u>we agree with Randall that those cases were effectively overturned by the *Iqbal* court</u>. <u>Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*</u>. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. . . .
>
> <u>After *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints</u>. All that remains is the Rule 9 heightened pleading standard.

*Randall*, 610 F.3d at 709-10 (emphasis added) (footnote omitted).

### III.   ANALYSIS

The City and the Chief argue in the first part of their Motion that Mr. Daniel's negligent supervision and inadequate training claims are subsumed by his federal claim for deliberate indifference. More specifically, the City and the Chief contend that Alabama law does not recognize either claim against a municipality or a supervisory employee and cite to several district courts that have so held. (Doc. 15 at 4). However, the City and the Chief point to no <u>binding</u> Supreme Court of Alabama or, alternatively, Eleventh Circuit authority confirming their position, and

this court has not been able to independently locate any.

Additionally, all the cases that the City and the Chief refer to in their Motion were decided on a summary judgment record and included alternative evidentiary-based reasoning for dismissing such claims. *See, e.g., Styron v. City of Foley*, 2005 WL 3098926, at *1 (S.D. Ala. Nov. 18, 2005) ("This cause is before the court on the motion of defendants, City of Foley, James Miller, James Brown, Bruce Thrift, Darren Miller, Tony Nelson, and Heidi Loftis, for summary judgment (Doc. 44), plaintiffs' response thereto (Doc. 64), and defendants' reply (Doc. 70)."); *Styron*, 2005 WL 3098926, at 5 (granting summary judgment in part because, assuming viability of claim, there was a lack of "evidence regarding the employer's constructive awareness of the employee's incompetency"); *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1240 (M.D. Ala. 2010) ("Before the court is Defendants' motion for summary judgment (Doc. # 66), which is accompanied by a memorandum and an evidentiary submission."); *Borton*, 734 F. Supp. at 1259 ("However, assuming the validity of the claim under Alabama law, the negligent supervision and training claim would fail on the merits."); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1050 (S.D. Ala. 2007) ("Before the Court is the Defendants' Motion for Summary Judgment, the Plaintiff's Response, the Defendants' Reply, and all evidentiary materials offered in support thereof.").; *Jackson*, 508 F. Supp. 2d at 1058

("Alternatively, assuming *arguendo* that a claim for negligent supervision, hiring, and training exists under Alabama law, the Plaintiff has failed to present evidence regarding the City of Jackson's constructive awareness of the Officers' incompetency.").

Therefore, from both a procedural perspective and a substantive standpoint, this court is not persuaded by *Styron*, *Hamilton*, or *Jackson*. Accordingly, this section of the Motion is **DENIED**.

The second part of the Motion relates to the adequacy of Mr. Daniel's federal deliberate indifference claim. This particular portion is improperly premised upon the heightened pleading requirement that used to govern civil rights cases involving issues of individual capacity liability within the Eleventh Circuit (*see, e.g.*, Doc. 15 at 3 ("Nevertheless, in examining the factual allegations in this complaint, the Court 'must keep in mind the heightened pleading requirements for civil rights cases.'") (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003); Doc. 15 at 8 ("This does not meet 'the heightened pleading requirements for civil rights cases.'") (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003)), but now no longer applies as explained in *Randall* as set forth above.

Additionally, neither the City, nor the Chief, in his official capacity, is even entitled to assert a qualified immunity defense. Accordingly, that section of the

9

Motion is also **DENIED**.

However, in reviewing Mr. Daniel's complaint, the court does observe that although he has indicated that he is suing all the individual defendants (*i.e.*, the Chief and Officers Phillips and Manning) in both their individual and official capacities, in his counts, he does not indicate the role in which each defendant is being sued. Accordingly, the court consistent with the Eleventh Circuit's admonishment against shotgun pleading and this court's concomitant duty to order repleader whenever it deems such measure to be appropriate,[1] *sua sponte* **ORDERS** Mr. Daniel to replead his complaint within 20 days of the entry date of this order for the purpose of clarifying the capacities that he is asserting against all individual defendants for each count in which they are named.

## IV.   CONCLUSION

Therefore, for the reasons stated above, the Motion is **DENIED**.  Further, the court *sua sponte* **ORDERS** Mr. Daniel to file an amended complaint within 20 days

---

[1] *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.") (footnote omitted); *id.,* 516 F.3d at 984 ("In light of defense counsel's failure to request a repleader, 'the court, acting *sua sponte*, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.'") (italicizing and underlining added) (citation omitted).

of the entry of this order that cures the above pleading deficiencies.

**DONE** and **ORDERED** this the 28th day of June, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge