FILED
2015 Jul-09 AM 11:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TRAVARIUS DANIEL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:11-CV-1355-VEH |
| | ) |
| **CITY OF BIRMINGHAM, as a** | ) |
| **person under U.S.C. § 1983; et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

### I.   Introduction

Plaintiff initiated this § 1983 civil rights case on April 20, 2011.[1] (Doc. 1). Due to the related prosecution of a 2011 criminal case against Plaintiff in state court, this civil action was stayed roughly 30 months ago on December 27, 2012. (Doc. 47). On June 11, 2015, for good cause shown by Defendants, the court lifted the stay and reinstated the case for the limited dual purposes of (i) permitting Defendants to file a motion seeking a dismissal of Plaintiff's case for his failure to prosecute as well as his fugitive status and (ii) establishing a briefing schedule on such motion.

Pending before the court is Defendants' Motion To Dismiss (Doc. 67) (the

---

[1] The entire complaint contains seven counts asserted under a combination of federal and state law and all of which arise out of Plaintiff's arrest on March 20, 2011. (Doc. 1 at 1 ¶ 2).

"Motion") filed on June 18, 2015. Plaintiff responded to this Motion on June 25, 2015. (Doc. 70). Defendants followed with their reply (Doc. 71) on July 2, 2015.

## II.  Analysis

Within this Motion, Defendants seek a with prejudice dismissal of Plaintiff's case on the two separate grounds previously identified above. (Doc. 67 at 4 ¶ 8). The court addresses the merits of a dismissal based upon the fugitive disentitlement doctrine first.

### A.  Fugitive Disentitlement Doctrine

#### 1.  General Principles

In *F.D.I.C. v. Pharaon*, 178 F.3d 1159 (11th Cir. 1999), the Eleventh Circuit described the fugitive disentitlement doctrine as:

> an equitable doctrine that limits access to the courts by fugitives from justice. *United States v. Barnette*, 129 F.3d 1179, 1183-84 (11th Cir. 1997). Although fugitive status "does not strip the case of its character as an adjudicable case or controversy [,] it disentitles the [fugitive] to call upon the resources of the Court for determination of his claims." *Id.*, 129 F.3d at 1184 (citation and quotation omitted)
>
> The fugitive disentitlement doctrine has been applied to dismiss fugitives' criminal and civil appeals, as well as fugitives' affirmative claims for relief.
>
> ***
>
> [T]he rationales for the fugitive disentitlement doctrine "include the difficulty of enforcement against one not willing to subject himself to

the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him; and the need to avoid prejudice to the nonfugitive party." *Magluta*, 162 F.3d at 664 (citations omitted).

*Pharaon*, 178 F.3d at 1161, 1162 (footnotes omitted).

When using a plaintiff's fugitive status to dismiss an affirmative claim, the Eleventh Circuit requires satisfaction of the following three elements:

> (1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court, dismissal, is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine.

*Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998) (citing *Degen v. United States*, 517 U.S. 820, 829, 116 S. Ct. 1777, 1783, 135 L. Ed. 2d 102 (1996)). Regarding the first element, a party must either have "absented himself from the jurisdiction with the intent to avoid prosecution[,]" *United States v. Fonseca-Machado*, 53 F.3d 1242, 1244 (11th Cir. 1995), or constructively fled, *i.e.*, "depart[ed] for a legitimate reason from the jurisdiction in which his crime was committed but who later remains outside that jurisdiction for the purpose of avoiding prosecution . . . ." *Id.*

"The district court's power to dismiss a cause [on fugitive-driven grounds] 'is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits.'" *Magluta*, 162 F.3d at 665 (quoting *Jones v. Graham*, 709 F.2d 1457,

1458 (11th Cir. 1983)). Finally, the applicable standard of review is abuse of discretion. *Id.*

### 2. Application

Defendants have represented to the court, and counsel for Plaintiff do not dispute,[2] that:

> In November 2014, [Plaintiff] was the subject of a traffic stop by the Jefferson County Sheriff's Dept. He fled when one of the deputies was attempting to open plaintiff's car door after [P]laintiff had refused a command to exit the car. A car pursuit was called off when Plaintiff began to exceed 100 mph on wet roads.
>
> On November 19, 2014, Plaintiff was arrested on several counts arising from the incident, including attempting to elude and aggravated assault (on the deputy). He was released that same day on bond. The prosecuting assistant district attorney filed a motion to revoke [Plaintiff]'s bond in the pending unlawful breaking and entering of a vehicle (UBEV) case arising from the incident in this civil litigation. While the judge granted the motion and Plaintiff's bond was revoked, the D.A. could not get the order before Plaintiff was released on bond on the new charges arising from the traffic stop. Plaintiff subsequently failed to appear at the trial setting of the UBEV case on December 1, 2014, and has been at large ever since.

(Doc. 67 at 10-11 ¶ 21).

Plaintiff's limited response to this foregoing summary of his criminal history includes that his attorneys "have not been able to communicate with the Plaintiff in

---

[2] Neither admitting nor denying, Plaintiffs' counsel state that such facts "are unknown" to them. (Doc. 70 at 5 ¶ 12).

4

more than a year" and that "they have no knowledge of Plaintiff's reasons for not appearing for the criminal case." (Doc. 70 at 5 ¶ 11). Further, although conceding that it "may be true that the Plaintiff is a fugitive," his lawyers reemphasize that "have no knowledge of the circumstances leading up to this fugitive status." *Id.*

While Plaintiff's counsel have disavowed having any knowledge of why Plaintiff has failed to appear as a criminal defendant, they have made no effort to explain, through case authority or otherwise, why this lack of information matters in analyzing the doctrine's application. *Cf. United States v. The Public Warehousing Co. K.S.C.*, No. 1:09-CR-490-TWT, 2011 WL 1126333, at *4 (N.D. Ga. Mar. 28, 2011) (declining to apply fugitive disentitlement doctrine to foreign company that "closed its U.S. office for business reasons" and "remains outside the United States because it has no reason to be here").

Additionally, Plaintiff's lawyers concede "that the Plaintiff in fact did not appear for his criminal trial and is therefore legally a 'fugitive.'" (Doc. 70 at 5 ¶ 14). Thus, the court finds that the first prong of the fugitive disentitlement doctrine is satisfied.

As for the second prong–Plaintiff's fugitive status having a connection to this civil litigation–Defendants state and, Plaintiff's counsel do not contest, that Plaintiff's criminal case for the unlawful breaking and entering of a vehicle in which his bond

5

was revoked, "arise[s] from the same incident as the claims in this lawsuit." (Doc. 67 at 12 ¶ 23). Therefore, the court concludes that the second prong is met.

Regarding the third prong, the court agrees with Defendants that "allowing Plaintiff to preserve his civil case while [he] remain[s] a fugitive from criminal prosecution [for the underlying charge involved in Plaintiff's civilly-challenged arrest before this court] is certainly inequitable." (Doc. 67 at 12 ¶ 24); *see Pesin v. Rodriguez*, 244 F.3d 1250, 1253 (11th Cir. 2001) (applying doctrine to fugitive civil litigant because "it would be inequitable to allow Osorio to use the resources of the courts only if the outcome is a benefit to her"); *see also id.* (listing rationales supporting use of doctrine, including encountering "difficulty [in] enforcing a judgment against a fugitive[,]" "promoting the efficient operation of the courts, discouraging flights from justice, and avoiding prejudice to the other side caused by the appellant's fugitive status" (citing *Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997))).

Plaintiff's attorneys offer no direct opposition to Defendants' treatment of the third element. Instead, they simply state that they are "not in a position to properly respond to the Motion to Dismiss based on Plaintiff's apparent fugitive status since they have no knowledge of why Plaintiff failed to appear for his criminal trial." (Doc. 70 at 5 ¶ 14). Once again, however, Plaintiff's lawyers do not link how this lack of

knowledge is applicable to the court's consideration and balancing of the equities.

Therefore, with all three prongs substantiated, the court finds, in its discretion, that a dismissal of this case with prejudice is appropriate. However, the court will delay the entry of the final judgment order for a period of thirty days to provide Plaintiff's counsel with a reasonable amount of time to try and reconnect with Plaintiff and, <u>if</u> they are able to do so, to file a further response to the Motion explaining, <u>with sworn testimony and pinpointed citations to applicable case authority</u>, why the fugitive disentitlement doctrine should not apply to him. Absent a persuasive supplemental filing made by Plaintiff within thirty days from the entry date of this order, **the court will enter a final judgment order dismissing Plaintiff's case with prejudice**.

### B. Plaintiff's Failure To Prosecute

Because the court has preliminarily determined that an equitable dismissal based upon Plaintiff's fugitive status is appropriate, it does not reach the merits of Defendants' alternative basis offered for dismissal–Plaintiff's failure to prosecute while the case was subject to a stay and administratively closed by the court.

### III. Conclusion

Accordingly, Defendants' Motion is due to be granted in part, termed as moot in part, and otherwise denied (*i.e.*, in terms of obtaining an immediate, outright

7

dismissal of Plaintiff's lawsuit with prejudice). After the expiration of thirty days from the entry date of this order, the court will reevaluate the record and decide whether issuing a final judgment order dismissing Plaintiff's case with prejudice is appropriate.

**DONE** and **ORDERED** this 9th day of July, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge